**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MARK B. WESSELER, | : | |
| *Plaintiff*, | : | Case No. 1:23-cv-95 |
| v. | : | Judge Jeffery P. Hopkins |
| LOUIS DEJOY, POSTMASTER GENERAL, | : | |
| *Defendant*. | : | |

## OPINION AND ORDER

In this employment discrimination case, Plaintiff Mark Wesseler ("Plaintiff" or "Wesseler"), a postal worker, asserts claims against Defendant United States Postal Service ("Defendant" or the "Postal Service") for disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791, age discrimination under the Age Discrimination Employment Act of 1967, 29 U.S.C. § 621, and retaliation. The matter is presently before the Court on the Postal Service's Motion for Summary Judgment (Doc. 17). Wesseler has filed a Memorandum in Opposition (Doc. 22), and the Postal Service has filed a Reply (Doc. 23). For the reasons set forth below, the Court **GRANTS** the Motion for Summary Judgment (Doc. 17) and **DISMISSES** Wesseler's Complaint (Doc. 1) **WITH PREJUDICE**.[1]

[1] Consistent with this Court's Standing Order Governing Civil Cases ("Standing Order"), the Postal Service submitted Proposed Undisputed Facts in support of its Motion for Summary Judgment (Doc. 17-1). The Standing Order provides that "[t]o every brief in opposition to a motion for summary judgment, the opponent *must* attach a document entitled 'Response to Proposed Undisputed Facts' that states . . . whether each of the facts asserted by the moving party is admitted or denied." *See* Standing Order, II.F.6.b (emphasis added). Additionally, the Standing Order provides that "[t]he response *must* also include . . . a list of each issue of material fact the opponent contends must be tried, supported with citations to evidence that would be admissible at trial." *Id.* Here, not only has Wesseler failed to provide a response to the Postal Service's Proposed Undisputed Facts, but Wesseler has also failed to provide his Disputed Issues of Material Fact.

## I. BACKGROUND

Plaintiff Mark Wesseler began working for the Postal Service in 2003. Wesseler Dep., Doc. 15-1, 29:18–23. In 2005, he became a letter carrier and worked in that capacity for quite some time—but not without injury. *Id.* at 29:25–30:1. While working as a letter carrier in 2007, Wesseler injured his knee. *Id.* at 38:4–14. He filed for worker's compensation and his claim was approved. *Id.* at 39:6–25. That was not the only injury that Wesseler suffered. In 2008, Wesseler suffered yet another injury, affecting his neck, shoulder, arm, and hand. *Id.* at 36:3–7; 47:6–49:6; 50:11–20; 55:13–19. Following this injury, he once again applied for worker's compensation and his claim was approved. *Id.* As a requirement for the worker's compensation program, Wesseler periodically submitted Postal Service Duty Status Report (CA-17) forms from his doctors concerning his medical conditions and resultant work restrictions. Grice Decl., Doc. 16-1, ¶ 3; Grice Decl., Ex. 1, Doc. 16-2, PageID 366–71.

Several years after his second injury, Wesseler began working at the Postal Service under a modified job offer in 2012. Wesseler Dep., Doc. 15-1, 60:22–62:4. He did not perform letter carrier duties under that modified offer. *Id.* This would be the first of several modified job offers that the Postal Service offered him. In 2018, a new manager offered Wesseler an updated modified job offer and he accepted. *Id.* at 71:18–72:6; 80:5–10. Then again, in November 2020, when Sue Steiner took over as one of Wesseler's supervisors, Steiner gave Wesseler a new modified job offer. *Id.* at 97:6–10; Wesseler Dep., Ex. E, Doc. 15-2, PageID 315–16. This time, however, Wesseler rejected that offer. Wesseler Dep., Doc. 15-1, 123:13–23. Wesseler was offered another modified job offer on December 7, 2020. Wesseler Dep.,

---

Because Wesseler has provided neither his response nor his proposed disputed issues of material fact, the Court assumes that Wesseler does not dispute the Postal Service's Proposed Undisputed Facts.

Ex. I, Doc. 15-1, PageID 320–21. Wesseler also rejected this offer, indicating the offer was "outside physical restrictions, requires use of a bag and no consecutive days off." *Id.* The Postal Service sent Wesseler home after he rejected that offer. Wesseler Dep., Ex. K, Doc. 15-1, PageID 324–25.

Soon after Plaintiff declined the December 2020 offer, the Postal Service, in accordance with governing procedures, notified the Department of Labor's Office of Workers' Compensation Programs ("DOL") of the dispute about job suitability. Grice Decl., Doc. 16-1, ¶¶ 9–10. As a result, DOL began a review to determine whether the offer was suitable. *Id.* ¶ 10; Grice Decl., Ex. 5, Doc. 16-2, PageID 378. As part of that review, in February and March of 2021, DOL sought additional medical information. Grice Decl., Doc. 16-1, ¶ 11; Grice Decl., Ex. 6, Doc. 16-2, PageID 379–84. Then, on April 1, 2021, the Postal Service sent a letter to DOL requesting, in part, a second opinion regarding Wesseler's restrictions because his restrictions became, at least in some ways, more restrictive after the November 4, 2020 job offer. Grice Decl., Doc. 16-1, ¶ 12. Wesseler was then referred to Dr. Albert Becker for a second opinion regarding his work restrictions. *Id.* ¶ 13; Grice Decl., Ex. 6, Doc. 16-2, PageID 379–84. Dr. Becker provided his second opinion on June 10, 2021, providing various restrictions for Wesseler and opining that the job requirements for the December 7, 2020 modified job offer "do not fit within the limitations that [he] has outlined in the OWCP-5 form." Grice Decl., Doc. 16-1, ¶ 13; Grice Decl., Doc. 16-2, Ex. 8, PageID 386–96. Dr. Becker indicated Wesseler "is not capable of performing the position as described." Grice Decl., Doc. 16-2, Ex. 8, PageID 393.

As a result of Dr. Becker's second opinion, the DOL advised the Postal Service to offer Wesseler a job within the work restrictions outlined by Dr. Becker. Grice Decl., Doc. 16-1,

¶ 14; Grice Decl., Doc. 16-2, Ex. 9, PageID 397–99. In response, the Postal Service extended Wesseler a new modified job offer, which he accepted on September 2, 2021. Wesseler Dep., Doc. 15-1, 160:5–161:15; Wesseler Dep., Ex. J, Doc. 15-2, PageID 322–23; Grice Decl., Doc. 16-1, ¶ 15; Grice Decl., Ex. 10, Doc. 16-2, PageID 400–01. Wesseler returned to work shortly thereafter. Grice Decl., Doc. 16-1, ¶ 16. Wesseler testified that the September 2021 modified job offer was within his restrictions. Wesseler Dep., Doc. 15-1, 175:22–176:7. Plaintiff had no contact with his supervisors at the Postal Service or anyone in human resources between December 2020, when he was sent home following rejection of the offer, and September 2021, when he returned to work. *Id.* at 159:24–160:16.

In August or September 2021, Wesseler ultimately received worker's compensation for the entire period from December 7, 2020 through August 2021. *Id.* at 170:23–171:2. However, Wesseler asserts that he was not offered back pay, sick leave, annual leave, or thrift savings reimbursement. *Id.* at 171:1–2; 186:1–13; *see also* Doc. 22, PageID 450. Shortly thereafter, Wesseler contacted an Equal Employment Opportunity ("EEO") counselor on or about September 20, 2021 concerning his claim that the November and December 2020 modified job offers constituted discrimination and retaliation. Wesseler Dep., Doc. 15-1, 167:7–168:7; Wesseler Dep., Ex. L, Doc. 15-2, PageID 327–28. His EEO contact summary stated:

> **Summary of Issue:** The Post Master of Cincinnati Karen Garber sent me home due to my physical Disabilities on December 7, 2020. At that time, three Doctors have recommended that I can not perform the job which I was hire. Karen gave me a 2499 Job Offer that would have me carry mail on the street. When I refuse the offer, I was sent home. My original 2499 was signed around 2012 after returning to the Post Office due to the NRP. While off work , the Department of Labor sent me to their Doctor in Dayton Ohio Doctor Becker. Doctor Becker stated in his report that I can not perform the job which I was hired. I believe I was sent home because of my disability, age and I am part of

> the NRP. My original job offer was given to me and I returned back to work from the NRP. I have been awarded Disability from Social Security.
>
> **Remedy Requested:** I am seeking financial settlement which includes any and all back pay.

Wesseler Dep., Ex. L, Doc. 15-2, PageID 328. Plaintiff then filed a formal EEO complaint in December 2021. That complaint concerned the November and December 2020 modified duty job offers and the decision to send him home following his rejection of the December offer. Wesseler Dep., Ex. K, Doc. 15-2, PageID 324–25. Wesseler's complaint did not identify a separate Postal Service decision to deny him back pay, leave, benefits, retirement contributions, or other compensation as an act of discrimination or retaliation. *Id*.

Thereafter, Wesseler initiated this employment discrimination action in February 2023. In his Complaint, Wesseler asserts three claims: (1) disability discrimination, (2) age discrimination, and (3) retaliation.[2] The Postal Service now seeks summary judgment on all of Wesseler's claims on the basis that Wesseler failed to exhaust his claims administratively. Doc. 17. Wesseler, however, contends in his response that he timely filed a formal EEO complaint within the 45-day filing requirement. Doc. 22. Upon receipt of the Postal Service's Reply (Doc. 23), the Motion for Summary Judgment became ripe for consideration.

---

[2] Wesseler's Complaint mentions a "hostile work environment" claim in its introductory paragraph, but it does not assert a separate hostile-work-environment count or allege facts identifying the conduct, actors, dates, protected basis, or manner in which the alleged conduct altered the terms or conditions of his employment. Compl., Doc. 1, ¶ 1. In opposing summary judgment, Wesseler refers to workplace comments, alleged hostility toward his injuries and FMLA requests, and a derogatory statement by another employee. Doc. 22, PageID 448–52. Those assertions identify a theory materially different from the pleaded claims that the Postal Service failed to accommodate him, failed to engage in the interactive process, and retaliated against him. To the extent Wesseler seeks to assert a distinct hostile-work-environment claim for the first time in his summary-judgment opposition, he may not do so. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005).

## II. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

## III. LAW AND ANALYSIS

The Postal Service asserts that it is entitled to summary judgment on all of Wesseler's claims because Wesseler failed to timely exhaust his administrative remedies. Doc. 17, PageID 408–15. Wesseler counters that he timely filed his EEO claim. Doc. 22.

### A. Discrimination Claims

A federal employee, like Wesseler, pursuing discrimination claims under the Rehabilitation Act or the federal-sector EEO process "must initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The regulation permits an extension only where the employee establishes lack of notice or awareness, lack of reasonable knowledge that the discriminatory matter occurred, circumstances beyond the employee's control despite due diligence, or another sufficient reason recognized by the agency or EEOC. 29 C.F.R. § 1614.105(a)(2). The exhaustion requirement serves the important purposes of notifying the agency of the alleged discrimination and providing an opportunity for investigation and conciliation before litigation. *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998). Although federal employees alleging age discrimination are not *required* to seek administrative relief before filing a complaint in federal court, a federal employee who elects the administrative route for an age-discrimination claim must comply with its applicable requirements and deadlines. *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5–6 (1991); *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001).

Wesseler asserts the modified duty job offers provided in November and December 2020 and the Postal Service's decision to send him home when he declined the December 2020 offer serve as the basis for his claims. *See* Compl., Doc. 1. These events, however,

occurred long before he sought EEO counseling. And Wesseler was on notice of those decisions when they occurred. In fact, Wesseler testified that he believed on December 7, 2020, the Postal Service had discriminated against him by sending him home after he rejected the offer. Wesseler Dep., Doc. 15-1, 164:24–165:12. Wesseler testified that he simply wanted to wait until he returned to work to file his complaint and that he thought he had 60 days from his return to work to file. *Id.* at 167:19–168:7. But at the latest, Wesseler was required to initiate EEO counseling for his discrimination claims within 45 days of December 7, 2020. 29 C.F.R. § 1614.105(a)(1). His September 2021 EEO contact occurred more than nine months later and was untimely as to the November and December 2020 modified duty job offers, the decision to send him home, and all other alleged discriminatory conduct occurring in 2020 or earlier. *See* Wesseler Dep., Ex. L, Doc. 15-2, PageID 327–28; Doc. 22, PageID 448–51.

A federal employee's failure to seek EEO counseling within the 45-day window, like Wesseler's failure here, warrants dismissal of untimely discrimination claims. *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993–95 (6th Cir. 2009); *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004) (explaining the limitations period for a discrete discriminatory act begins when the decision is made and communicated to the employee). Wesseler's assertions to the contrary are unpersuasive. Wesseler argues that he timely initiated the filing of his EEO complaint "shortly after returning to employment and discovering that [the Postal Service], in yet another act of retaliation had elected not to fully compensate [him] for the time he had been sent home pursuant to the November and December 2020 modified job offers." Doc. 22, PageID 450–51. But his "discovery" in September 2021 does not render his knowledge as to the alleged discriminatory acts in November and December 2020, upon which his EEO summary and complaint were based,

obsolete. Wesseler believed he had been discriminated against at the time those events occurred and failed to initiate EEO counseling within 45 days of those events occurring.

Additionally, the Sixth Circuit has made clear that the limitations period "begin[s] to run in response to discriminatory *acts* themselves, not in response to the continuing *effects* of past discriminatory acts." *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991) (citations omitted). Though Wesseler attempts to frame this "retaliatory act" as a separate retaliation claim, the Postal Service's alleged failure to fully compensate him could easily be construed as a continuing effect of the discriminatory acts that are alleged to have occurred in November and December 2020. *Ricks*, 449 U.S. at 257–58 (explaining that a later effect of an earlier employment decision does not restart the limitations period absent a distinct, present discriminatory act); *Horton*, 369 F.3d at 910. Thus, his claims were not timely exhausted and the Postal Service is entitled to summary judgment on his discrimination claims.

**B. Retaliation Claim**

Turn then to Wesseler's retaliation claim. The Postal Service argues that this claim is also time-barred and that Wesseler's retaliation theory advanced in response to the Postal Service's Motion is "an improper attempt to assert a new theory or claim" at summary judgment. Doc. 17, PageID 414–15. Wesseler advances the same argument as before—that is, he could not initiate his EEO claim until after he learned of the Postal Service's retaliatory action in September 2021 when they failed to fully compensate him. Doc. 22.

"Although retaliation claims are often excepted from the exhaustion requirement when they arise after an [EEO claim] is filed, retaliation claims based on conduct that preceded the charge must be included in that charge." *Taylor v. Donahoe*, 452 F. App'x 614, 617 (6th Cir. 2011); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir.

1998). Wesseler's position is that he could not file his EEO complaint until after September 2021 because "he could not have predicted" the Postal Service would not fully compensate him when he returned to work. Doc. 22, PageID 451. Intentional or not, by asserting he deliberately waited to file his EEO complaint until after he was not fully compensated, Wesseler has effectively conceded that his retaliation claim is based on conduct that preceded initiating his EEO claim, meaning that he was required to include his claim that he was retaliated against when the Postal Service did not fully compensate him in his EEO complaint. But the issue for Wesseler is that although he stated he was bringing a retaliation claim, he did not identify the basis for that claim as the Postal Service's failure to fully compensate him. Instead, he identified that he was seeking "a financial settlement" including "back pay" as a *remedy* for the Postal Service's conduct in November and December 2020. Wesseler Dep., Ex. L, Doc. 15-2, PageID 328; Wesseler Dep., Ex. K, Doc. 15-2, PageID 324–25.

Federal-sector EEO regulations require the counseling process to identify the claims or issues presented, and a later formal complaint may include only claims raised in counseling or claims that are "like or related" to those matters. 29 C.F.R. § 1614.105(b)(1). This provides an opportunity for investigation and conciliation before litigation. *Davis*, 157 F.3d at 463. This means that a plaintiff is not precluded from bringing suit on a claim "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim[.]" *Id.* But in this case, the facts alleged by Wesseler only related to the Postal Service's conduct culminating in November and December 2020. The charge raises no facts related to the Postal Service's alleged decision not to fully compensate him. Simply put, Wesseler did not place the Postal Service on notice that he was challenging a later decision to deny back pay, leave restoration, retirement contributions, or any other particular benefit when the focus

of his EEO claim was on the modified job offers and the decision to send Wesseler home after he rejected the December 2020 offer.[3] Wesseler Dep., Ex. L, Doc. 15-2, PageID 328; Wesseler Dep., Ex. K, Doc. 15-2, PageID 324–25. "While it is not necessary that the charge specifically invoke his other claims of [retaliation], the additional claims must, at a minimum, 'reasonably relate[] to or grow out of the factual allegations' stated in the charge." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 445 (6th Cir. 2018) (finding that a plaintiff's "generic charge of race and sex-based discrimination on the date of his termination simply would not otherwise" lead the EEOC to investigate "hostile work environment claims or discrimination claims based on promotions, raises, leave or job duties"). Though the compensation decision *may* have ultimately stemmed from the Postal Service's conduct in November and December 2020, that connection is too attenuated to conclude that Wesseler's charge would reasonably have prompted the EEO to investigate this distinct, uncharged claim—especially where mention of compensation came only in relation to a "remedy" for the Postal Service's actions that took place in, or prior to, November and December 2020.

That is not Wesseler's only shortcoming. To Wesseler's detriment, he did not even advance his present theory in his Complaint. Instead, much like the allegations in his EEO summary and claim, Wesseler indicates that the Postal Service retaliated against him "by continuing to deny his requests for reasonable accommodation and by refusing to engage in a dialogue regarding same," and that he is seeking "lost pay and benefits" as a remedy for the Postal Service's "unlawful actions." Compl., Doc. 1, ¶¶ 35–36. But until Wesseler responded to the Postal Service's Motion for Summary Judgment, Wesseler had yet to vocalize that his

---

[3] The Court also notes as a general matter that back pay ordinarily is a remedy that depends on a finding of liability for an underlying discriminatory act, rather than an independently discriminatory act in itself. *See Howe v. City of Akron*, 801 F.3d 718, 743–45 (6th Cir. 2015); *Szeinbach v. Ohio State Univ.*, 820 F.3d 814, 821 (6th Cir. 2016).

retaliation theory was based on the Postal Service's failure to compensate him in September 2021, rather than its November and December 2020 conduct. Wesseler's attempt to now frame his retaliation claim in an entirely new way at summary judgment is not proper because a plaintiff is not permitted to amend or expand his Complaint through arguments advanced in opposition to summary judgment. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007); *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005). Wesseler's efforts here are clearly a last-ditch effort to avoid dismissal which the law does not countenance.

Accordingly, Wesseler did not exhaust his claims. As a result, the Postal Service is entitled to summary judgment on Wesseler's claims.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** the Motion for Summary Judgment of Defendant (Doc. 17) and **DISMISSES** Plaintiff's Complaint (Doc. 1) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

September 28, 2026

Jeffery P. Hopkins
United States District Judge